IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PET SPECIALTIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-CV-00985 |
| | ) | |
| NAVISIONTECH, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Before the Court is Defendant's Motion to Dismiss or, in the alternative, to Transfer Venue. (ECF No. 10.) Defendant's central argument is based on personal jurisdiction. (*Id.*) For the reasons stated below, the Court will deny Defendant's motion to dismiss and to transfer venue.

## I.    BACKGROUND

Plaintiff, Pet Specialties, is a North Carolina limited liability company with its principal place of business in Chapel Hill, North Carolina. (ECF No. 2 ¶ 1.) It operates three pet supply stores around the Triangle area, with stores located in Chapel Hill, Raleigh, and Cary. (*Id.* ¶ 10.) It is managed by its sole Member, Frank Papa. (ECF Nos. 12-1 ¶ 2; 2 ¶ 15.) Papa is a North Carolina citizen. (ECF No. 12-1 ¶ 2.)

Defendant, Navisiontech, is a Florida corporation operated by its president, Gregory Volkov, with its principal place of business in Sarasota, Florida. (ECF No. 15-1 ¶¶ 2, 6.)

Navisiontech represents itself as "a leading provider of end-to-end integrated, adaptable [b]usiness [a]pplications." (*Id.* ¶ 5.)

In February 2018, Plaintiff decided to replace its existing retail management system with a new enterprise resource planning ("ERP") and point of sale ("POS") system and began to search for a contractor to implement this transition. (ECF No. 12-1 ¶ 7.)[1] LS Nav is a "complete retail management system which includes both ERP and POS." (ECF No. 2 ¶¶ 12, 14.) While searching for a contractor to implement Plaintiff's transition to a new system, Papa found Defendant through its website. (ECF No. 12-1 ¶ 8.) Some time prior to March 9, 2018, Papa and representatives of Defendant began to discuss Pet Specialties retaining Navisiontech to help the pet store replace its existing management system with LS Nav. (*See* ECF No. 2 ¶¶ 15–16.) On March 9, 2018, the parties entered into a Client Services and Licensing Agreement ("CSLA"). (*Id.* ¶ 18.) The CSLA was drafted by Defendant, signed by Volkov, and emailed by Volkov to Papa who executed it and returned it by email to Volkov. (ECF No. 12 at 3.)

According to Plaintiff's complaint, Papa soon became concerned about Defendant's lack of progress in implementing the transition to LS Nav. (ECF No. 2 ¶ 21.) On October 22, counsel for Plaintiff penned a demand letter to Defendant proposing that Defendant return the $82,551.59 that Plaintiff had already paid it in exchange for a mutual release of all claims between the parties. (ECF No. 12-2 at 2, 4–5.) One week later, on October 29, 2018, Plaintiff initiated this lawsuit against Defendant in North Carolina state court alleging five causes of action: fraud and fraudulent inducement, unfair and deceptive trade practices,

---

[1] "ERP is a modular software system designed to integrate the main functional areas of an organization's business processes into a unified system." (ECF No. 2 ¶ 13.)

negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. (ECF Nos. 2 ¶¶ 52–96; 12 at 5–6.)[2] In Plaintiff's Complaint, Defendant is alleged to have billed Plaintiff for 923 hours of services at a cost of $245,853.99 for the still incomplete transition to LS Nav. (ECF No. 2 ¶¶ 47–48.)

On November 27, 2018, Defendant removed the case to this Court. (ECF No. 1.) This motion followed in which Defendant argues that Plaintiff's case should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, transferred to Florida. (ECF No. 10 at 1.)

## II.    DEFENDANT'S MOTION TO DISMISS

### A.  Standard of Review

On a personal jurisdiction challenge, the plaintiff bears the burden of ultimately proving personal jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Where, however, as here, the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on the motion papers, supporting legal memoranda, and allegations in the complaint[3]—the plaintiff need only make a prima facie showing of personal jurisdiction. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Carefirst of Md.*, 334 F.3d at 396. "[A] plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." *See Universal*

---

[2] In the alternative, Plaintiff also sought a declaratory judgment as to the enforceability of the CSLA. (ECF No. 2 ¶¶ 97–103.)

[3] "The Court may also consider supporting affidavits." *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 538 n.2 (M.D.N.C. 2015).

*Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)).  However, a threshold prima facie finding of jurisdiction does not settle the issue, as the plaintiff "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather,* 773 F.3d at 558 (quoting *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)); *see also Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("[W]hen the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence, we have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6)."). "Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." *Pathfinder Software*, 127 F. Supp. 3d at 538 (quoting *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)).  When both sides present evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made. *Id.*

## B. Discussion

Defendant argues that this Court lacks personal jurisdiction over it because it is a "wholly-Florida based company" that preformed "virtually all contractual services" in Florida such that its contacts with the state of North Carolina are merely "ephemeral." (*See* ECF Nos. 10 at 1; 15 at 1, 4.) Plaintiff argues in response that this Court has specific personal jurisdiction over Defendant, (ECF No. 12 at 9–17), and argues in support of its claim the following contacts between Defendant and North Carolina:

1. Defendant and Plaintiff agreed to a CSLA that allegedly required "that work would be performed in North Carolina." (*Id.* at 13.)

2. The parties had an in-person meeting when Volkov came to North Carolina to meet with Papa and two of his managers. (*See* ECF Nos. 12-1 ¶ 15; 11-2 ¶ 19.)

3. The parties communicated through emails, phone calls, and online GoToMeeting meetings. (*See* ECF No. 12-1 ¶¶ 16–17.) Papa calculates that he exchanged 821 emails, 42 GoToMeeting meetings, and dozens of phone calls with Defendant during the course of Pet Specialties' dealings with Navisiontech and that, but for a period in July, while he was traveling abroad, all such emails, meetings, and calls occurred while he was in North Carolina. (*Id.* ¶¶ 16–18.)

4. Papa also states that "Navisiontech's representatives repeatedly accessed remotely Pet Specialties' computer hardware and software located in North Carolina." (ECF 12-1 ¶ 15.)

A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the

district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather*, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Id.* (citing N.C. Gen. Stat. § 1–75.4(1)(d); *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977)). The two-prong test therefore "merges into [a] single question" when North Carolina is the forum state, allowing the court to proceed directly to the constitutional analysis. *See Universal Leather*, 773 F.3d at 558–59; *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant: general or specific personal jurisdiction. *Universal Leather*, 773 F.3d at 559. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Plaintiff concedes that this Court does not have general jurisdiction over Defendant, claiming instead that this Court has specific personal jurisdiction over Defendant arising from Navisiontech's contacts with North Carolina. (ECF No. 12 at 9.) Specific personal jurisdiction can be exercised over a defendant if that defendant has "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted).

Plaintiff advances two different legal theories for the exercise of jurisdiction by this Court over Defendant: (1) that Defendant purposefully availed itself of the privilege of

conducting business in North Carolina—the purposeful availment theory—and (2) that Defendant committed an intentional tort causing harm in and directed at North Carolina—the effects test theory. (*See* ECF No. 12 at 9–17.) The Court will address each, concluding that while Plaintiff's purposeful availment theory fails to support that this Court has jurisdiction over Defendant, the effects test theory does support the exercise of specific personal jurisdiction over the Defendant.

### 1. *Purposeful Availment*

The Fourth Circuit employs a three part test to determine whether the exercise of specific jurisdiction comports with due process under a purposeful availment theory: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods,* 814 F.3d at 189 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002)).

The first prong of this test requires the district court to evaluate whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being hauled into court there." *Universal Leather,* 773 F.3d at 559 (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir. 1989)). This analysis is "flexible" and involves a case-by-case consideration of several factors. *Id.* at 560 (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 302 (4th Cir. 2012)). The factors a court should consider are context dependent. *Compare Universal Leather,* 773 F.3d at 560 (enumerating factors courts consider in "the business context") *with*

*ALS Scan*, 293 F.3d at 709, 714 (enumerating a different set of factors in "the Internet context"). However, the Court should not view the presence or absence of these factors "in isolation from the totality of the facts before the court." *See Universal Leather*, 773 F.3d at 561.

As the Fourth Circuit explained in *Universal Leather*, "in the business context" the factors suggesting purposeful availment include:

> whether the defendant maintains offices or agents in the forum State; (2) whether the defendant owns property in the forum State; (3) whether the defendant reached into the forum State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum State; (5) whether [a choice of law clause selects the law of the State]; (6) whether the defendant made in-person contact with a resident of [the State] regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Id.* at 560 (citing *Consulting Eng'rs*, 561 F.3d at 278) (internal quotations omitted). "Through an analysis of such factors, if a court finds that the Defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists." *Consulting Eng'rs*, 561 F.3d at 278.

In "the Internet context," the Fourth Circuit relies instead on the three-part test articulated in *ALS Scan* to determine "when it can be deemed that an out-of-state citizen, through electronic contacts, has conceptually 'entered' the state via the Internet for jurisdictional purposes." *ALS Scan*, 293 F.3d 709, 713. There, the court held that in "the Internet context," a state can exercise jurisdiction over an out of state defendant who "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, [if] (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 709, 714.

Here, Plaintiff argues that the Court has personal jurisdiction over Defendant both because of Defendant's traditional business contacts with North Carolina (ECF No. 12 at 12–16) and because of Defendant's digital contacts with the state, (*id.* at 10–11). Thus, this Court will look to both *Universal Leather's* eight factors and *ALS Scan's* three-part test to see if Defendant's connections with North Carolina are such that it purposefully availed itself of the privilege of conducting activities in the state, such that it would not offend due process to hale the company into this Court.

i.     *Purposeful Availment in the Business Context*

As discussed above, in the business context, to determine if a Defendant has purposefully availed itself of the privilege of conducting activities in a forum state, courts look to a non-exhaustive list of eight factors put forward in *Universal Leather.*

Here, Plaintiff does not contend that Defendant maintains offices or agents in North Carolina. (ECF No. 12 at 16.) Nor does it argue that Defendant holds property here, initiated business here, or that a choice of law clause makes North Carolina the proper forum state. (*Id.*) It does, however, contend that Defendant deliberately engaged in significant or long-term business activities in the state, that Defendant made in-person contact with a resident of the State regarding the business relationship, that the relevant contract (the CSLA) required performance of duties in the State, and that the nature, quality, and extent of the parties' communications about the business being transacted constituted purposeful availment of the privilege of doing business in North Carolina. (*Id.*) Defendant disagrees, arguing that "each of the purposeful availment factors . . . weighs against a finding of specific [personal] jurisdiction." (*See* ECF No. 11 at 10.)

Turning to these disputed factors, Plaintiff first argues that Defendant engaged in significant or long-term business activity in North Carolina. (ECF No. 12 at 16.) It is undisputed that Pet Specialties was Navisiontech's first and only customer in North Carolina and that the parties did not contemplate an ongoing business relationship once the LS Nav project was completed. (*See* ECF No. 11-1 at 3 (discussing scope of the parties' relationship).) That raises the question of whether the single contract at issue—the CSLA—is "significant" enough to constitute purposeful availment. Our case law establishes that "a contract with an in-state entity does not automatically establish minimum contacts with the forum state." *Pathfinder*, 127 F. Supp. 3d at 540. It also establishes that a single contract may give rise to specific personal jurisdiction where "the defendant deliberately has engaged in significant activities within a State or has created continued obligations between [it]self and residents of the forum." *Perdue Foods,* 814 F.3d at 190 (quoting *Burger King*, 471 U.S. at 475–76). However, as the Fourth Circuit explained in *Perdue Foods*, only the rare contract will, by itself, be significant enough to establish the minimum contacts needed for personal jurisdiction. *See id.* at 190–91. In *Perdue Foods*, the Fourth Circuit contrasted the 20-year franchise agreement that gave rise to personal jurisdiction in *Burger King*, 471 U.S. at 467, with an agreement that did not "launch any ongoing collaboration or promise frequent interactions," holding that the later did not establish "significant or long-term business activities in the forum state." 814 F.3d at 190–91. Here, Plaintiff and Defendant engaged in a single contract of definite duration by which Defendant would help Plaintiff transition to a new retail management system. In the absence of any other contacts with the forum state, this alone does not constitute significant business activity in the forum state.

Next, Plaintiff argues that Defendant's in-person contact with representatives of Plaintiff weighs in favor of jurisdiction. (ECF No. 12 at 16.) Here, the parties had one in-person meeting when Volkov came to North Carolina to meet with Papa and two of his managers after the parties entered into business together. (*See* ECF Nos. 12-1 ¶ 15; 11-2 ¶ 19.) A single in-person meeting suggests a weaker connection between Defendant and forum state than in other cases where courts have relied on this factor to find personal jurisdiction. *Compare Universal Leather*, 773 F.3d at 561 (finding Defendant availed itself of the privilege of conducting business in North Carolina, in part, by taking "several" trips to North Carolina as part of "vigorous business solicitations" in the state) *with Sneha Media*, 911 F.3d at 199, 200 (finding that one in-person meeting suggested "contacts with the forum [far less] intense and purposeful" than the in-person contacts that gave rise to personal jurisdiction in *Universal Leather*).

Plaintiff also contends that the relevant contract, the CSLA, required performance of duties in North Carolina. (*See* ECF No. 12 at 16.) Specifically, Plaintiff points to the "Place and Time of Performance" clause of the CSLA which states that the "Services . . . provided under this Agreement will require . . . performance primarily at principal business offices . . . identified above." (ECF Nos. 12 at 3–4; 11-1 at 6.) Those offices are, respectively, Plaintiff's office in Chapel Hill and Defendant's office in Sarasota. (ECF No. 11-1 at 3.) Defendant argues that this language created no obligation for Defendant to perform work in North Carolina—it could, after all, perform all the work at its own headquarters—and that "[f]actually, all performance occurred outside of North Carolina." (ECF No. 15 at 5.) While, at this stage, factual conflicts must be resolved in Plaintiff's favor, *Pathfinder*, 127 F. Supp. 3d

at 538, this court need not accept Plaintiff's interpretation of the CSLA because "contract interpretation is a question of law," *Johannssen v. Dist. No. 1-Pac. Coast Dist.*, 292 F.3d 159, 171 (4th Cir. 2002). Here, both the text and structure of the contract provision at issue suggest Defendant has the better reading. The language Plaintiff identifies calls for performance at the "principal business offices" involved, not specifically at Plaintiff's office. (ECF No. 11-1 at 6.) Furthermore, the Place and Time of Performance clause, read in context, seems designed to minimize inconvenience to Plaintiff by keeping as much work as possible *out* of Plaintiff's office. (*See id.*) The language immediately following the portion of the CSLA quoted by Plaintiff reads "[Plaintiff] will provide [Defendant] with access to [Plaintiff's] principal business offices and other facilities to the extent necessary to permit the performance of the Services; provided that [Defendant] will use reasonable efforts not to interfere with [Plaintiff's] customary business operations." (*Id.*) Thus, the contract at issue does not require performance of any duties in North Carolina, it merely permits it.

Finally, Plaintiff argues that the nature, quality, and extent of the parties' communications about the business being transacted supports the exercise of personal jurisdiction. (ECF No. 12 at 16.) Plaintiff has alleged that Papa had substantial communications with representatives of Defendant about the LS Nav system, including 821 emails, 42 GoToMeeting meetings, and dozens of phone calls, almost all of which occurred while Papa was in North Carolina. (ECF No. 12-1 ¶¶ 16–18.) Moreover, these communications go to the heart of Plaintiff's case, which argues, in part, that Defendant made fraudulent representations to Plaintiff to convince it to enter into the CSLA. (*See* ECF No. 2 at ¶¶ 52–66.) Thus, the communications between Defendant and Plaintiff about their project

were numerous, substantive, and occurred while Plaintiff, through Papa, was in North Carolina. This factor therefore weighs in favor of concluding that Defendant purposefully availed itself of the privilege of conducting business in North Carolina. *See Tire Eng'g*, 682 F.3d at 305–06 (finding personal jurisdiction over a defendant whose "substantive deliberations" with a co-conspirator in the forum state gave rise to plaintiff's claim).

In sum, only two of the eight *Universal Leather* factors weigh in favor of this Court exercising jurisdiction. Plaintiff and Defendant had one in-person meeting in North Carolina and did have extensive, substantive communication while Plaintiff was in the forum state. However, all other factors suggest Defendant never intended to avail itself of the privilege of doing business in North Carolina. In light of this conclusion, the Court need not consider the other two prongs of the purposeful availment test. *Pathfinder*, 127 F. Supp. 3d at 540. Thus, the Court concludes that purposeful availment in the business context does not support the exercise of jurisdiction over Defendant.

ii.      *Purposeful Availment in the Internet Context*

Plaintiff also argues that this Court has jurisdiction over Defendant under what it calls the "Electronic Contacts Test" articulated by the Fourth Circuit in *ALS Scan*. (ECF No. 12 at 10–11.) As discussed above, the *ALS Scan* test asks whether the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, [and whether] (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.

Here, Plaintiff contends that jurisdiction over Defendant is proper according to this test because Navisontech "repeatedly accessed a computer system in North Carolina to install

an ERP and POS system on a computer system located in North Carolina for use in North Carolina." (ECF No. 12 at 11.) Defendant, however, contends that Plaintiff fails the *ALS Scan* test for two reasons. First, Defendant insists that the servers it "*actually* accessed remotely were <u>NOT</u> located in North Carolina," and so denies it had meaningful electronic contact with the state absent its emails and other digital communications with Plaintiff. (*See* ECF No. 15 at 5, 9.) Next, it argues that whatever electronic activity it did direct into North Carolina "did not form the basis of [Plaintiff's] cause of action," so that Plaintiff fails the third prong of *ALS Scan.* (*Id.* at 8–10.)

Defendant's first objection misses the mark. To be sure, Defendant has produced an affidavit from Navisiontech's President, Gregory Volkov, declaring that Defendant never configured any of Plaintiff's software in North Carolina and that it never accessed any server located in North Carolina. (ECF No. 15-1 ¶¶ 27–29.) However, Plaintiff has likewise presented an affidavit of its owner, Frank Papa, stating that "Navisiontech's representatives repeatedly accessed remotely Pet Specialties' computer hardware and software located in North Carolina." (ECF No. 12-1 ¶ 15.) At this stage in the proceedings, where factual conflicts must be resolved in Plaintiff's favor, *Pathfinder*, 127 F. Supp. 3d at 538, this declaration from Papa suffices to allege that Defendant directed electronic activity into North Carolina by remotely accessing Plaintiff's hardware and software located in the state.

Defendant's second argument, however, is compelling. The third prong of the *ALS Scan* test requires that the defendant's electronic activity "creates, in a person within the [forum] State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. For example, in *Lostutter v. Olsen*, this Court, applying the *ALS Scan* test, held that

North Carolina had specific personal jurisdiction over defendants who allegedly defamed plaintiff by directing defamatory content into the Winston-Salem area through a website they operated. No. 1:16-cv-1098, 2017 WL 3669557, at *6–9 (M.D.N.C. Aug. 24, 2017). However, in this case, none of Plaintiff's causes of action arise from Defendant's remote access to its servers, software, or hardware. (*See* ECF No. 2 ¶¶ 52–103.) Rather, Plaintiff's claims arise from representations Defendant made to it prior to and after signing the CSLA, as well as from Defendant's failure to implement the LS Nav system in a timely manner—not from anything Defendant did while accessing Plaintiff's computer systems. (*See id.*) As a result, Plaintiff has failed to show that the electronic activity Defendant directed into North Carolina created one of its causes of action. Thus, Plaintiff has not shown purposeful availment in the Internet context and the Court need not analyze whether the exercise of personal jurisdiction would be constitutionally reasonable here.

In sum the Court concludes that Plaintiff has failed to make a prima facie showing of specific personal jurisdiction under the purposeful availment theory either in the business context or internet context. Nor does Defendant's contacts with North Carolina, when viewed in this totality, amount to the kind of "purposefully established minimum contacts" that would allow this Defendant to "reasonably anticipate being hauled into court" in North Carolina. *See Burger King,* 471 U.S. at 474 (internal quotation marks and citations omitted.)

### 2. *The Effects Test*

Plaintiff next argues that personal jurisdiction over Defendant is appropriate under the effects test articulated by the Supreme Court in *Calder v. Jones,* 465 U.S. 783, 789 (1984). (ECF No. 12 at 11–12.) "Under the effects test, a court may exercise personal jurisdiction over a

non-resident defendant who is a primary participant in an alleged wrongdoing intentionally directed at a resident in the forum state." *Pan-Am. Prods. & Holdings, LLC, R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 684 (M.D.N.C. 2011) (internal citation and quotation omitted). "The test has three prongs: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in a forum that can be said to be the focal point of the harm; and (3) the defendant expressly aimed tortious conduct at the forum in a manner that the forum can be said to be the focal point of it." *Id.* The second prong of the effects test is met when a plaintiff alleges it has suffered financial harm in the forum state. *See Hunter v. Mountain Commerce Bank*, No. 1:15cv1050, 2016 WL 5415761, at *5–6 (M.D.N.C. Sept. 28, 2016) (finding the second prong met where "[p]laintiffs allege they were injured financially in North Carolina"); *see also Hanson & Morgan Livestock, Inc., v. B4 Cattle Co., Inc.*, No. 5:07-cv-00330, 2008 WL 4066251, at *5 (S.D.W. Va. Aug. 27, 2008) ("Plaintiff, a West Virginia corporation, was injured financially in West Virginia and therefore felt the brunt of the harm in West Virginia."). The third prong of the effects test "requires the [d]efendant[ ] to have expressly aimed their tortious activity at [the forum state.]" *Hunter*, 2016 WL 5415761 at *6. It is not sufficient for the defendant to know that a plaintiff could be harmed in the forum state. *Id.* For example, in *Young v. New Haven Advocate*, the Fourth Circuit held that Virginia lacked personal jurisdiction over newspapers, editors, and reporters who published an allegedly defamatory article about a Virginia prison warden to a Connecticut-based website. 315 F.3d 256, 264 (4th Cir. 2002). The *Young* court reasoned that because the defendants in no way targeted Virginia readers, they lacked sufficient contacts with Virginia to be subject to its jurisdiction. *Id.* Similarly, in *Pan-American Products*, this Court held that North Carolina lacked

jurisdiction over defendants in a copyright infringement case where defendants allegedly infringed plaintiff's furniture copyright by selling similar furniture but defendants (1) did not advertise their furniture in North Carolina and (2) did not negotiate in North Carolina. *See Pan-Am.*, 825 F. Supp. 2d at 685. However, in *Hunter*, this Court held that defendant—a Tennessee bank—had "directed [its] allegedly tortious conduct into North Carolina" by making a series of misrepresentations by phone and email to North Carolina plaintiffs "for the purpose of inducing continued actions with [defendant]." *Hunter*, 2016 WL 5415761 at *6–7. Taken together, these cases show that the third prong of the effects test is met when a defendant aims its tortious activity at the forum state by intentionally targeting residents of that state.

Here, plaintiff alleges facts sufficient to support a prima facie showing of personal jurisdiction over Defendant with respect to its fraud claim utilizing the effects test. (*See* ECF No. 2 ¶¶ 52–66.) First, Plaintiff alleges the tort of fraud, (*see id.*), "an intentional tort." *Hunter*, 2016 WL 5415761 at *6; *Dubois v. Henderson Cty. Bd. of Educ.*, No. 1:13-cv-00131, 2014 WL 340475, at *8 (W.D.N.C. Jan. 30, 2014). Second, Plaintiff alleges it felt the brunt of the harm caused by Defendant's fraud in North Carolina because it was financially injured in North Carolina. (ECF No. 2 at ¶¶ 64–65.) Specifically, Plaintiff alleges that it only contracted with Defendant "as a result of material misrepresentations of fact and omissions of fact" and that, as a result, it suffered damages. (*Id.* at ¶ 64.) Third, Plaintiff sufficiently alleges that Defendant expressly aimed its tortious conduct at North Carolina so that it could be said that North Carolina was the focal point of Defendant's tortious conduct. This prong is less clear cut than the prior two as Plaintiff does not allege that Defendant initiated negotiations with it or even

advertised in North Carolina, facts that would demonstrate that Defendant aimed its tortious conduct at the state. *See Pan-Am.*, 825 F. Supp. 2d at 685 (holding that plaintiff failed to meet the third prong of the effects test when it could not show that defendant advertised or promoted itself in North Carolina.) However, here, just as in *Hunter*, Defendant is alleged have made false representations to a North Carolina citizen to induce that citizen to do business with it. For example, Defendant is alleged to have promised Plaintiff that it could complete the transition to LS Nav in under 300 labor hours, a promise it knew to be false and made to lure Plaintiff into business privity with it. (*See* ECF No. 2 ¶¶ 55–58.) This is a far cry from the situation in *Young*, where the journalists, writing for a hometown audience in Connecticut, had no intention of impacting Virginia. In this case, Defendant is alleged to have made promises to a North Carolina company it knew it could not keep, harming that company as a result. Thus, because Plaintiff has shown that Defendant "directed the allegedly tortious conduct into North Carolina," the third prong of the effects test is satisfied. *See Hunter*, 2016 WL 5415761 at *7.

Plaintiff has therefore alleged sufficient facts to make out a prima facie case for jurisdiction over Defendant under the effects test, but only for Plaintiff's fraud claim, the sole intentional tort alleged. Specific jurisdiction, generally however, "must be established for each claim alleged." *Pam-Am. Prods.*, 825 F. Supp. 2d at 678. The Court must therefore consider whether its jurisdiction over one of Plaintiff's causes of action permits it to hear all of Plaintiff's causes of action. As discussed below, the Court finds that it does possess the power to exercise pendent jurisdiction over Plaintiff's non-fraud claims.

i.     *Pendent Jurisdiction*

It does not appear that the Fourth Circuit has resolved whether the doctrine of pendent personal jurisdiction applies in diversity cases. However, in *ESAB Group, Inc. v. Centricut, Inc.*, the Fourth Circuit held that, under the doctrine of pendent personal jurisdiction, a district court which has obtained personal jurisdiction over a defendant by way of a federal claim may also adjudicate related state law claims, "even though that state's long-arm statute could not authorize service over the defendant[ ] with respect to the state claims." 126 F.3d 617, 628 (4th Cir. 1997) (holding that a district court had personal jurisdiction over plaintiff's RICO claim through a nationwide service of process law and so could exercise pendent personal jurisdiction over any additional, factually related claims). As the *ESAB* Court explained, requiring a defendant to defend factually related state law claims for which no independent basis for personal jurisdiction exists does not offend the constitutional right to due process because it "impose[s] only a minimal burden" on defendants while promoting "judicial economy and convenience of the parties." *See id.* at 628-29.

There seems to be a split among the district courts in the Fourth Circuit on whether to extend the logic of *ESAB* to cover cases in which the original basis of the district court's jurisdiction is diversity and not federal question. On one hand, courts in this district exercise pendent personal jurisdiction when sitting in diversity so long as the claims for which they lack jurisdiction "arise[]out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *See N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005); *Hunter*, 2016 WL 5415761 at *8, 10. The decision to exercise this pendent personal jurisdiction is left to the discretion of the district

court. *N.C. Mut. Life*, 386 F. Supp. 2d at 656; *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002). In considering whether to exercise pendent jurisdiction, the district court should consider "judicial economy, convenience and fairness to litigants." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). On the other hand, the entire doctrine of pendent personal jurisdiction was recently criticized by another district court in this Circuit, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 491 (W.D. Va. 2019); *see also Gatekeeper Inc. v. Stratech Sys.*, 718 F. Supp. 2d 664, 667–68 (E.D. Va. 2010) (critiquing pendent jurisdiction on the grounds that out-of-state defendants "could not reasonably anticipate being haled into court on claims unrelated to [their] forum state contacts, and thus haling them into court on those unrelated claims would violate their due process rights") (internal quotation omitted).

As the Fourth Circuit has not spoken directly to the applicability of pendent personal jurisdiction to diversity cases, this Court will look to other federal courts and to the underlying rationale for pendent personal jurisdiction to determine whether it can apply the doctrine to this case. Looking beyond the Fourth Circuit, several Circuits have approved of district courts exercising pendent personal jurisdiction over factually related state law claims. *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (noting in a diversity case that "if personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists.") (internal quotations omitted); *Botefuhr*, 309 F.3d at 1272. Furthermore, a number of these courts have approved of the exercise of pendent personal jurisdiction in the specific context of diversity cases. *See SunCoke*

*Energy, Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 221 (6th Cir. 2009) (Rodgers, J.,

dissenting); *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) (noting that

the district court below in a diversity case exercised jurisdiction over related state law claims

"in accordance with the doctrine of pendent personal jurisdiction").

The Court has considered the applicable law, the "minimal burden" placed on a

defendant to defend a claim factually related to a claim he is already litigating in federal court,

and the tendency of pendent personal jurisdiction to promote judicial economy. *See ESAB*,

126 F.3d at 628. The Court, therefore, determines that under the circumstances of this case,

it may, within its discretion, exercise pendent personal jurisdiction over any claim that arises

from the same nucleus of operative facts as Plaintiff's fraud claim. Here, all of Plaintiff's

claims arise from a common nucleus of operative facts as Plaintiff's fraud claim. Each claim

focuses on the fraught dealings between Plaintiff and Defendant over the course of 2018 that

gave rise to Plaintiff's fraud claim. (ECF No. 2 ¶¶ 67–103.) Judicial economy and logistical

convenience to the parties also weigh in favor of exercising pendent personal jurisdiction in

this case, as it permits a full adjudication of the claims between the parties in a single forum.

Thus, this Court in its discretion will exercise pendent personal jurisdiction over the remainder

of Plaintiff's claims so that all these related claims can be heard together.

## III.    DEFENDANT'S MOTION FOR TRANSFER OF VENUE

Having determined that it has personal jurisdiction over all of Plaintiff's claims at this

stage of the proceedings, this Court now turns to Defendant's alternative request: that "this

matter should be transferred to the United States District Court for the Middle District of

Florida." (ECF No. 11 at 12.) Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Such requests for a transfer of venue are "committed to the sound discretion of the district court." *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp 2d 491, 493 (E.D.N.C. 2006). In considering such a transfer of venue, courts should consider:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996). Ultimately, the party seeking transfer "has the burden of persuasion and must show (1) more than a bare balance of convenience in his favor and (2) that a transfer does more than merely shift the inconvenience." *Datasouth Comput. Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989) (internal quotation omitted).

Here, Defendant argues that this action should be transferred to Florida both because "[a]s a Florida corporation it will be extremely expensive for Navisiontech to defend this case in North Carolina," and because, by its estimate, "Navisiontech has at least ten witnesses [in Florida], whereas Pet Specialties only has one [witness in North Carolina]." (ECF No. 11 at 13.) It further adds that this Court should not defer to Pet Specialties decision to file first and

in North Carolina, arguing that Plaintiff and Defendant were racing to the courthouse and that the preference normally given to the venue choice of the first-to-file "loses much of its force" when, as here, "the circumstances suggest a race to the courthouse." (ECF No. 15 at 11 (quoting *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.*, No. 3:10-cv-278, 2011 WL 148264, at *4 (W.D.N.C. Jan. 18, 2011)).) Plaintiff rejoins that its business would be inconvenienced if this case moved to Florida, that it should be allowed to litigate in the forum of its choice, and that a North Carolina court should hear this dispute as it centers around North Carolina law. (ECF No. 12 at 19–20.)

In light of these competing considerations, the Court concludes that Defendant has not met its burden of persuading the Court to transfer this case. In particular, the Court believes that in a diversity case governed by North Carolina law, North Carolina is the proper venue. Accordingly, Defendant's motion to transfer venue will be denied.

## IV. CONCLUSION

The Court concludes that Plaintiff has made a prima facie showing of specific personal jurisdiction related to its fraud claim under the effects test, though such showing could not be made under the theory of purposeful availment. Furthermore, the Court finds that it may, within its discretion exercise pendent jurisdiction over Plaintiff's additional claims and it elects to do so. Finally, the Court declines to grant Defendant's request to transfer this case to the Middle District of Florida.

For the reasons outlined herein, the Court enters the following:

## [ORDER TO FOLLOW ON NEXT PAGE]

**ORDER**

IT IS THERFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue, (ECF No. 10), is DENIED.

This, the 30th day of September 2019.

/s/ Loretta C. Biggs
United States District Judge